No. 44,862

HOMER TOLER, d/b/a HOMER TOLER SHEET METAL WORKS, and V. J. CLOUGH, *Appellees,* v. DON E. SATTERTHWAITE and MARI-CHARLES SATTERTHWAITE, *Appellants.*

(434 P. 2d 814)

Opinion filed December 9, 1967.

*Kurt Riesen,* of Wichita, argued the cause, and was on the brief for appellants.

*Kenneth M. Nohe,* of Wichita, argued the cause, and *Dale Kidwell, George W. Ball, Jack H. Greene* and *Terry O'Keefe,* of Wichita, were with him on the brief for appellees.

The opinion of the court was delivered by

FATZER, J.: Don E. Satterthwaite and Maricharles Satterthwaite, husband and wife, appeal from a judgment foreclosing mechanic's liens on their home in the city of Wichita.

The parties to the action, the appellee, Homer Toler, d/b/a Toler Sheet Metal Works, as plaintiff; the appellee, V. J. Clough, as defendant and cross-petitioner, and the appellants, Don E. Satterthwaite and Maricharles Satterthwaite, as defendants, by and

through their counsel stipulated that the facts pertinent to this appeal are as follows:

On September 30, and October 1, 1960, Don E. Satterthwaite and Maricharles Satterthwaite, hereafter referred to as defendants or appellants, entered into two written contracts with the Bontz Construction Company, Inc., hereafter referred to as Bontz, to purchase free and clear, a house to be built by Bontz on real property described as Lot 7, Block E, McEwen 5th Addition to the city of Wichita.

On October 11, 1960, Bontz obtained title to the lot by warranty deed which deed was filed of record October 17, 1960. Within a few days Bontz began construction of the house.

Commencing on December 9, 1960, the plaintiff Toler, under contract with Bontz, performed labor and furnished materials used in the construction of the house. Toler last performed labor and furnished materials on March 14, 1961.

On January 13, 1961, the defendant and cross-petitioner Clough, under contract with Bontz, commenced furnishing labor and materials which were used in the construction of the house. Clough last performed labor and furnished materials on May 28, 1961.

On March 14, 1961, the defendants mortgaged the real property to Frank C. Brosius Co., which instrument was filed of record on the same date. Six days later, on March 20, 1961, Bontz conveyed the fee simple title to the real property to the defendants and the deed was filed of record on March 29, 1961.

On May 3, 1961, and within 60 days after the date Toler last performed labor and furnished materials, he filed a mechanic's lien statement, naming himself as claimant and subcontractor, Bontz as contractor, and the defendants as owners of the property. Toler timely served the defendants with notice of the filing of his mechanic's lien.

On July 17, 1961, and within 60 days after the date Clough last performed labor and furnished materials, he filed a mechanic's lien statement naming Don E. Satterthwaite as owner, Bontz as contractor, and himself as claimant and subcontractor. Clough also timely served the defendants with notice of the filing of his mechanic's lien.

On July 26, 1961, Bontz was adjudicated a bankrupt in the United States District Court, and thereafter this action was filed to foreclose the claimant's liens.

On August 25, 1966, at the hearing on motions for summary judgment filed by the respective parties, the district court held that the mechanic's liens filed by Toler and Clough were valid, rendered judgment in the amounts claimed, and decreed foreclosure of the liens. At the same time, the court overruled the motion for summary judgment by the defendants against Toler and Clough. The defendants have appealed.

The appellants contend the appellees' lien statements as filed were fatally defective in form and content since they failed to state the true relationship of the parties, and designated the wrong person as owner of the property. They argue the appellees were, in fact, contractors dealing with Bontz, rather than subcontractors, since Bontz was the owner of the property when it contracted with them for labor and materials. They further argue they had only an executory contract with Bontz to purchase the house and lot, free and clear of encumbrances, upon completion, for a single price; that they were not the owners of the real estate when the appellees contracted for and furnished the labor and materials, as set forth in the lien statements, and having only an executory contract to purchase, they had no interest in the property that could be subjected to a mechanic's lien. They refer to *Lumber Co. v. Russell,* 93 Kan. 521, 144 Pac. 819; *Spalding Lumber Co. v. Slusher,* 121 Kan. 155, 246 Pac. 999, and *Kennedy v. Atchison,* 162 Kan. 694, 178 P. 2d 987, as to whom should be named as owner when a mechanic's lien is filed, but they rely chiefly upon *Logan-Moore Lumber Co. v. Black,* 185 Kan. 644, 347 P. 2d 438.

As preliminary to discussing the appellants' contentions, we refer to pertinent statutes relating to liens for labor and material. The Advisory Committee notes state the new code of civil procedure made no major change in the right and none in the procedure pertaining to liens for improvement of real property, except the volume of language in G. S. 1949, 60-1401, 60-1402, G. S. 1961 Supp., 60-1403 and G. S. 1949, 60-1404 was reduced for purpose of clarity. The corresponding sections of the subject matter were renumbered and are presently found in K. S. A. 1965 Supp., 60-1101, K. S. A. 60-1102, L. 1967, Ch. 325 (K. S. A. 60-1103), and K. S. A. 60-1104. To identify the statutes here pertinent, reference is made to those in force when lien statements in *Logan-Moore,* supra (G. S. 1949, 60-1401 and 60-1402), and in the instant case (G. S. 1961 Supp., 60-1403), were filed.

G. S. 1949, 60-1401 (now K. S. A. 1965 Supp., 60-1101) provides that any person performing labor or furnishing material for the improvement of real property under contract with the owner, shall have a lien upon the property for the labor performed or material furnished. Under the statute, the primary basis for establishment of a lien for labor and material *is a contract between the owner of the property and the claimant,* who is the contractor. The contract may be oral, written, or implied (*Deal Lumber Co. v. Vieux,* 179 Kan. 760, 298 P. 2d 339), and need not be with the owner of the fee simple title (*Lumber Co. v. Osborn,* 40 Kan. 168, 171, 19 Pac. 656), since the owner of an equitable interest in real estate is such an owner as may subject his interest to a mechanic's lien. (*Norris v. Nitsch,* 183 Kan. 86, 94, 325 P. 2d 326, and cases cited.)

G. S. 1949, 60-1402 (now K. S. A. 60-1102) provides that any person claiming a lien under the provisions of the preceding section shall file his verified lien statement setting forth the name of the owner, the name of the claimant, the amount of the claim, and a description of the property subject to the lien, *within four months* after the date material was last furnished or labor performed by the claimant under the contract. The right to a lien under those two sections is known as the "contractor-owner" relationship.

G. S. 1961 Supp., 60-1403 (now L. 1967, Ch. 325 [K. S. A. 60-1103]) provides that any subcontractor or other person furnishing labor or material under a contract with the contractor, may obtain a lien upon the real property in the same manner and to the same extent as the original contractor. To perfect the lien, the claimant is required to file a verified lien statement *within sixty days* after the date material was last furnished or labor performed under the subcontract, which shall state among other things, the amount due from the contractor, the name of the owner, the name of the contractor, the name of the claimant, and a description of the property subject to the lien. In addition, the claimant shall serve notice in writing of the filing of the claim upon the owner of the real property. The right to a lien under this section is referred to as the "subcontractor-contractor-owner" relationship. (*Lumber Co. v. Washington,* 80 Kan. 613, 103 Pac. 80; *Houston Lumber Co. v. Morris,* 179 Kan. 564, 297 P. 2d 165.) See, also, *Murphree v. Trinity Universal Ins. Co.,* 176 Kan 290, 295, 269 P. 2d 1025.

The purpose of the foregoing section is twofold. As indicated, the statute provides for the creation of a lien in behalf of a sub-

contractor who is not a direct creditor of the owner of the property. (*Powers v. Lumber Co.,* 75 Kan. 687, 90 Pac. 254.) The purpose of requiring service of the notice of the lien is to advise the owner of the property of the existence of the lien, afford him an opportunity to investigate the claim, determine its validity, and avoid paying twice for the same account. (*Rankin v. Rankin,* 86 Kan. 899, 122 Pac. 1120; *Clark Lumber Co. v. Passig,* 184 Kan. 667, 339 P. 2d 280.) The second purpose is to protect the subcontractor and provide him machinery to secure payment for labor performed and materials furnished for the benefit of the contractor and the owner during the construction.

The decisions relied upon by the appellants have been carefully examined in the light of the foregoing statutes, and we are of the opinion they do not uphold the appellants' contention.

The *Slusher* case, supra, states that ". . . [t]he holder of a naked option to purchase is not an owner, within the meaning of the mechanic's-lien statute." (p. 158.) That issue is not here involved. The *Kennedy* case, supra, involved an executory contact to purchase real estate, which expressly stipulated that the purchaser, Gibson, *acquired no right, title or interest in the property* until he had fully paid all sums due under the monthly payment plan therein provided. Gibson contracted for repair of a building on the premises, and the lien-claimant performed labor pursuant to that agreement. The defendant Atchison, seller and owner of the property, did not contract with plaintiff for repair of the building, nor did he authorize Gibson to have the repair made. In the meantime, Gibson failed to make the monthly payments required, and the district court cancelled the contract of purchase, decreeing that he had no interest or title in the property. The claimant brought an action to foreclose the mechanic's lien. The court found Gibson was never the owner of the real estate, or agent for the owner; had no authority to contract for the repair of the building, and that no lien for the labor performed attached to the land. See, *Lumber Co. v. Schweiter,* 45 Kan. 207, 210, 25 Pac. 592, involving a case of like import.

Obviously, the *Kennedy* case is inapplicable since Gibson had no interest or estate in the property, and there could be no lien on either the land or the building. Here, the appellants contracted with Bontz to purchase the specifically described lot and to build

a house for them and they ultimately acquired fee simple title to the property before the house was completed.

Likewise, *Lumber Co. v. Russell,* supra, merely holds that a *contractor* is required to name the owner with whom the contract was made. The court found the defendant Russell was the owner of the property when he contracted with the lumber company to furnish material to build the houses, despite the fact he was not the legal title owner and did not receive a deed to the property until more than a month after he contracted with the lumber company and it had commenced delivery of materials. The case involved a *contractor-owner* relationship, and not a *subcontractor-contractor-owner* relationship as is here presented.

While *Logan-Moore,* supra, is factually similar to the instant case in that it involved a contract to purchase a lot and build a house, and a contract to supply materials for construction, the point decided involved a proposed amendment to the lien statement which is not present in the instant case. As indicated, the lien statement there involved was filed pursuant to the provisions of G. S. 1949, 60-1401 and 60-1402. A brief review of the facts in light of the foregoing statutes demonstrates the inapplicability of *Logan-Moore* to the instant case. There, the Blacks contracted with one Lewis to purchase a lot and build a house pursuant to plans approved by them. Lewis obtained title to the lot and began construction. Under a contract with Lewis, Logan-Moore Lumber Co. supplied materials to build the house. About the time the house was completed, Lewis conveyed the property to the Blacks, and thereafter Logan-Moore Lumber Co. filed its lien statement within four months after it last furnished materials to Lewis. The verified statement alleged it had furnished materials under contract with the Blacks as the owners of the property. The petition to foreclose the lien alleged the facts, and sought to amend the lien statement on the theory that Logan-Moore was a subcontractor which had furnished materials to Lewis, who was the contractor of the Blacks, the owners of the property. This court denied the amendment upon the ground that to have allowed it would have permitted Logan-Moore to file a subcontractor's lien statement under 60-1403 long after the time had expired for filing such a lien statement. It was held that Logan-Moore knew when it filed the lien statement that it supplied the materials under a contract with Lewis and not the Blacks; that the lien statement was fatally defective when filed;

that no lien was created on the property which could be foreclosed, and there was nothing to amend.

As indicated, the lumber company mistakenly filed its lien statement under G. S. 1949, 60-1401 and 60-1402 upon the assumption the "contractor-owner" relationship existed between the claimant and the Blacks, whereas, as the facts indicate, it should have originally proceeded under 60-1403 upon the theory it was a subcontractor of Lewis, who was the contractor of the Blacks, the owners of the property. See, *Logan-Moore Lumber Co. v. Foley,* 181 Kan. 984, 990, 317 P. 2d 467, where a similar amendment was sought and denied for this reason.

In the instant case, the appellees filed their lien statements under 60-1403 upon the theory that a "subcontractor-contractor-owner" relationship existed between the parties, that is, the appellees were subcontractors who performed labor and furnished materials to Bontz, which was the contractor of the Satterthwaites, the owners of the property.

It is claimed the appellees were contractors dealing with Bontz rather than subcontractors, since Bontz was the owner of the property. The point is not well taken. Inherent in the district court's judgment sustaining the appellees' motion for summary judgment was the finding that the lien statements contained all the essential requirements of perfecting a valid subcontractor's lien pursuant to G. S. 1961 Supp., 60-1403. (*Houston Lumber Co. v. Morris,* supra.) Moreover, the record manifests that Bontz was the contractor since the appellants' contract required Bontz to purchase the lot and build the house according to the plans and specifications. The appellees dealt with Bontz as subcontractors and on that basis performed labor and furnished materials.

The appellants argue they were not the owners of the real estate when the appellees contracted for and furnished the labor and materials. The statute requires that the subcontractor's lien statement contain "the name of the owner, the name of the contractor," and that the lien be perfected "by serving a notice in writing of the filing of such a lien upon the owner of the land." As used in the statute relating to liens for labor and material, the word "owner" does not admit of any narrow construction that it include only the holder of the fee, but means the owner of an interest or estate in real property, and includes every character of title, whether legal or equitable, fee simple or leasehold. (*Hathaway v. Davis & Ran-*

*kin,* 32 Kan. 693, 5 Pac. 29; *Lumber Co. v. Osborn,* supra; *Lumber Co. v. Schweiter,* supra; *Getto v. Friend,* 46 Kan. 24, 26 Pac. 473; *Drug Co. v. Brown,* 46 Kan. 543, 26 Pac. 1019; *Lumber Co. v. Arnold,* 88 Kan. 465, 129 Pac. 178; *Bond v. Westine,* 128 Kan. 370, 278 Pac. 12; *Kennedy v. Atchison,* supra; *Norris v. Nitsch,* supra.)

Were the appellants at all times material the owners of an interest or estate in the property involved? We think they were. The record shows that their contracts with Bontz required Bontz to purchase the lot and build the house and upon completion, to convey fee simple title free and clear for the price stated. At least not later than October 11, 1960, when Bontz acquired title to the lot, the appellants became the owners of an equitable interest or estate in the property. Pursuant to the contracts, Bontz, as contractor, began construction of the house and entered into contracts with the appellees, as subcontractors, to furnish labor and materials for the construction. As the appellees parted with a valuable consideration in the form of labor and materials, the construction progressed, and as construction progressed, the equitable interest or estate of the appellants increased. On March 14, 1961, the date Toler last performed labor and furnished materials, the appellants mortgaged the property to Brosius to secure money to pay Bontz. Six days later, on March 20, 1961, Bontz conveyed the property by warranty deed pursuant to the contracts and in recognition of the appellants' prior equitable title, and no later than March 29, 1961, they became the record title owners when they recorded Bontz's deed. Clough last performed labor and furnished materials on May 28, 1961, some two months after the appellants became the record title owners.

During all the time the labor was performed and materials furnished, the appellants had title to an equitable interest or estate in the property which was subject to the liens, and when they received the fee simple title, the liens attached to the full extent of their ownership. Moreover, the appellants were the record title owners of the property described in the lien statements when they were filed and served which sufficed to perfect the liens, notwithstanding the fact that Bontz was the owner of the property when the contracts with the appellees to perform labor and furnish materials were entered into. To hold that the appellees' lien statements must state the name of Bontz as the owner of the property would be to require something of them which the statute does not require; and

to hold that a statement of the names of the appellants as owners at the time the lien statements were filed was insufficient, would be to deprive the appellees of liens when they had fully complied with the requirements of the statute.

In view of the foregoing, we are of the opinion the appellants at all times material herein were the owners, equitable, legal, or both, of the property involved and were properly named the owners of the property in the appellees' lien statements when they were filed, and written notice of the liens was properly served upon them as owners.

The requirements of K. S. A. 1961 Supp. 60-1403 being fully complied with, the district court did not err in rendering judgment sustaining the liens and decreeing foreclosure.

The judgment is affirmed.